IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JALEN BASS,

    Plaintiff,

        v.

ROLAND JONES, JR.,

    Defendant.

CIVIL ACTION FILE
NO. 1:23-CV-4031-TWT

## OPINION AND ORDER

This is a civil rights action. It is before the Court on the Defendant Roland Jones, Jr.'s Motion for Summary Judgment [Doc. 19] and Motion to Strike the Plaintiff Jalen Bass's Response to his Statement of Material Facts [Doc. 29], and the Plaintiff's Motion for Leave to Amend his Response to the Defendant's Statement of Material Facts [Doc. 31]. For the reasons set forth below, Plaintiff's Motion for Leave to Amend his Response to the Defendant's Statement of Material Facts [Doc. 31] is GRANTED. The Defendant's Motion for Summary Judgment [Doc. 19] is also GRANTED and his Motion to Strike the Plaintiff's Response to his Statement of Material Facts [Doc. 29] is DENIED.

## I.  Background[1]

This action arises out of a traffic stop that the Defendant conducted on the Plaintiff on August 6, 2022, in his role as an Atlanta Police Department ("APD") officer. (Def.'s Statement of Material Facts ¶¶ 1-3). Upon initiating the traffic stop, the Defendant advised the Plaintiff that he was being stopped because the Defendant believed he had failed to stop at a flashing red light. (*Id.* ¶ 3). After speaking with the Plaintiff, the Defendant believed that the Plaintiff may have been driving intoxicated and asked the Plaintiff to step out of his car. (*Id.* ¶ 9; Pl.'s Am. Resp. to Def.'s Statement of Material Facts ¶ 9). The Defendant also asked the Plaintiff to turn off his car several times, and when he did not do so, the Defendant reached through the window, unbuckled the Plaintiff's seatbelt, and placed the car in park. (Def.'s Statement of Material Facts ¶¶ 11, 13). After the Plaintiff did not exit his car when asked, the Defendant grabbed the Plaintiff by the arm and pulled him from the car. (*Id.* ¶¶ 14-16; Pl.'s Am. Resp. to Def.'s Statement of Material Facts ¶¶ 14-16).

The Defendant then walked the Plaintiff to his patrol car and asked him to get into the backseat. (Def.'s Statement of Material Facts ¶ 18). The Plaintiff did not get into the patrol car, stating that he felt uncomfortable doing so.

---

[1] The operative facts on the Motion for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

(Body Worn Camera Footage ("BWC"), [Doc. 22-4], 6:15-6:23). The Defendant again asked the Plaintiff to "have a seat," and when he did not, the Defendant pushed the Plaintiff, who was handcuffed, into the patrol car's backseat. (*Id.*, 6:23-6:27). The Defendant then picked up the Plaintiff's feet and ankles and moved them into the patrol car before shutting the back door. (*Id.*, 6:27-6:47). The Plaintiff sat himself upright and, from the backseat of the patrol car, spoke to several other officers that arrived on scene. (Def.'s Statement of Material Facts ¶ 22). An officer certified to perform field sobriety tests reported to the scene and administered those tests to the Plaintiff before determining that the Plaintiff was not under the influence of alcohol. (*Id.* ¶¶ 24-25). As a result, the Plaintiff was permitted to leave the scene with a citation for the traffic violation. (*Id.* ¶ 26).

The Plaintiff filed this action on September 8, 2023, asserting 3 claims: excessive force under 42 U.S.C. § 1983 and the Fourth Amendment (Count 1); assault and battery in violation of O.C.G.A. §§ 51-1-13, 51-1-14 (Count 2); and punitive damages under § 1983 and state law (Count 3). (Compl. ¶¶ 15-21). The Plaintiff alleges that the Defendant "slammed Plaintiff's head against the metal bars" in the patrol car, causing the Plaintiff to suffer a concussion (*Id.* ¶¶ 11, 13). The Defendant moved for summary judgment on all counts. [Doc. 19]. The Plaintiff responded and the Defendant moved to strike the Plaintiff's response to the Defendant's statement of material facts. [Doc. 29]. The Plaintiff

then moved for leave to file an amended response to the Defendant's statement of material facts. [Doc. 31]. The Court will address each motion in turn.

## II.  Legal Standards

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III. Discussion

### A.  Motion to Strike and Motion to Amend

Under Rule 12(f), a party may move to strike all or a portion of a "pleading" that contains "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A response to a statement of material facts is not a pleading listed under Rule 7(a). *See* Fed. R. Civ. P. 7(a). Therefore, the Defendant's Motion to Strike is improper because

only pleadings may be struck. For the same reason, the Plaintiff's position that Fed. R. Civ. P. 15(a) permitted him an opportunity to file an amended response as of right is incorrect. While the Defendant is correct that pursuant to Local Rule 56.1(A), the Plaintiff needed to seek the Court's leave to file the amended response, the Court will exercise its discretion to excuse the Plaintiff's error and will grant its belated request for leave to file the amended response. The Plaintiff's amended response was filed in good faith to correct errors in his original response and the Defendant has not established any prejudice from the Court's consideration of the amended response. Accordingly, the Court will deny the Defendant's Motion to Strike [Doc. 29] and grant the Plaintiff's Motion for Leave to Amend [Doc. 31].

## B. Motion for Summary Judgment

The Defendant first argues that the Plaintiff has failed to establish a Fourth Amendment violation because his use of force against the Plaintiff was reasonable under the circumstances. (Def.'s Mot. for Summ. J. at 6-11). Second, the Defendant argues that he is entitled to qualified and official immunity for his actions. (*Id.* at 11-13). As to qualified immunity, the Defendant asserts that even if the Plaintiff has established a Fourth Amendment violation, he has not shown that the Defendant's minor use of force violated clearly established law. (*Id.* at 12-14). As to official immunity, the Defendant contends that there is no dispute he was acting within the scope of his official duties in detaining the

Plaintiff and that the Plaintiff has not established that he acted with actual malice or intent to cause injury in pushing the Plaintiff into his patrol car. (*Id.* at 14-16).

The Plaintiff responds that the Defendant's use of force against the Plaintiff was not objectively reasonable and violated clearly established law. (Pl.'s Resp. to Def.'s Mot. for Summ. J., at 6-7, 13-17). Specifically, the Plaintiff contends that at the time the Defendant pulled him over, he was not suspected of having committed a violent crime, he was handcuffed and therefore posed no threat to the Defendant, and he did not resist or attempt to flee. (*Id.* at 7-10). Additionally, the Plaintiff asserts that the force the Defendant applied grossly exceeded the level of force warranted under the circumstances. (*Id.* at 11-12). As to official immunity, the Plaintiff argues that the City of Atlanta's use of force policy required the Defendant, as part of his ministerial duties, to warn the Plaintiff and give him an opportunity to comply before using force to detain him. (*Id.* at 18-20).

In reply, the Defendant asserts that the need for force under the circumstances was proportional to the chest push used and that the extent of the Plaintiff's injuries does not automatically dictate a finding that the force used was excessive. (Def.'s Reply in Supp. of Mot. for Summ. J., at 2-9). The Defendant also argues that a violation of the City of Atlanta's use of force policy does not equate to a showing of actual malice such that official immunity

cannot apply. (*Id.* at 10-11).

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quotation marks omitted). "A defendant who asserts qualified immunity has the initial burden of showing he was acting within the scope of his discretionary authority when he took the allegedly unconstitutional action." *Id.* at 1297. Once that is shown (and it is not challenged here), "the burden shifts to the plaintiff to establish that qualified immunity is not appropriate by showing that (1) the facts alleged make out a violation of a constitutional right and (2) the constitutional right at issue was clearly established at the time of the alleged misconduct." *Id.* The Court has discretion to decide these issues in either order depending on the circumstances, but the Plaintiff must demonstrate both prongs to survive a qualified immunity defense. *See Gaines v. Wardynski*, 871 F.3d 1203, 1208 (11th Cir. 2017).

The Georgia Constitution provides state officials with official immunity for their discretionary actions unless they acted "with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. art. I, § 2, ¶ IX(d). The actual malice standard is a demanding one that

"requires an officer to act with a deliberate intention to do a wrongful act[;]" unreasonable or even recklessly illegal conduct does not support such an inference. *Black v. Wigington*, 811 F.3d 1259, 1266 (11th Cir. 2016). Georgia law gives officers the authority to use "such reasonable nondeadly force as may be necessary to apprehend and arrest a suspected felon or misdemeanant." O.C.G.A. § 17-4-20(b).

When evaluating an excessive force claim, the court looks at the "totality of the circumstances," considers "the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance[s] the risk of bodily harm to the suspect against the gravity of the threat the officer sought to eliminate." *Charles v. Johnson*, 18 F.4th 686, 699 (11th Cir. 2021) (quotation marks and citations omitted). This objective reasonableness standard takes into consideration "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quotation marks omitted). The inquiry also acknowledges that police officers "are often forced to make split-second judgments about the need for such force in circumstances that are tense, uncertain, and rapidly evolving." *Piazza v. Jefferson Cnty., Ala.*, 923 F.3d 947, 953 (11th Cir. 2019).

### i.  Qualified Immunity as to Fourth Amendment Claim

There is no genuine issue that the Defendant is entitled to qualified immunity as to the Plaintiff's excessive force claim under the Fourth Amendment and § 1983. As an initial matter, the Plaintiff does not dispute that the Defendant was acting within the scope of his discretionary authority by detaining him. *See Gates*, 884 F.3d at 1297. Thus, the burden shifts to the Plaintiff to demonstrate that the facts alleged make out a violation of a clearly established constitutional right. *See id.*

The Plaintiff contends that the Defendant violated his Fourth Amendment rights by "slam[ming his] head against the metal bars that separated the front from the back of the police vehicle" which constituted "gratuitous force upon a non-resisting arrestee." (Compl. ¶¶ 16-17). Viewed in the light most favorable to the Plaintiff, *see Adickes*, 398 U.S. at 158-59, the evidence shows that after stopping the Plaintiff, the Defendant asked the Plaintiff to turn off his car several times and the Plaintiff failed to do so, prompting the Defendant to reach in and turn the car off himself. (BWC Footage at 4:34-5:10; Def.'s Statement of Material Facts ¶¶ 11, 13). The Defendant then asked the Plaintiff to step out of the car at least four times before handcuffing the Plaintiff and pulling him out of the car by his arm. (BWC Footage at 5:11-5:29; Def.'s Statement of Material Facts ¶¶ 14-16; Pl.'s Am. Resp. to Def.'s Statement of Material Facts ¶¶ 14-16). The Defendant then

walked the Plaintiff to the back of his patrol car and asked him twice to get in, but the Plaintiff did not do so, stating that he felt uncomfortable. (BWC Footage at 5:40-6:21). The Defendant asked the Plaintiff two more times to get into the patrol car, with the Plaintiff standing with his back towards the patrol car's open backseat, before pushing him in the center of the chest back towards the backseat. (*Id.* at 6:20-6:26). It is unclear from the angle of the video whether the Plaintiff's head struck any part of the patrol car as he fell backwards into the car. The Defendant then picked up the Plaintiff's feet and placed them fully into the car before closing the door. (*Id.* at 6:27-6:48). The Plaintiff situated himself upright in the backseat and spoke to several officers from that position over the next fifteen or so minutes, never complaining of any pain or injury. (*Id.* at 6:50-28:07; Def.'s Statement of Material Facts ¶ 23; Pl.'s Am. Resp. to Def.'s Statement of Material Facts ¶ 23).

Contrary to the Plaintiff's contentions that he was "not offering resistance," (*see, e.g.*, Compl. ¶¶ 11-12, 17), the BWC footage reflects the Plaintiff's passive resistance to the Defendant's commands in multiple instances, simply by not responding or doing what the Defendant asked. While the Plaintiff characterizes his lack of response as his "failure to instantly obey [the Defendant's] command[s]," that assertion is also belied by the BWC footage showing the Defendant asking the Plaintiff multiple times to turn his car off, to exit his vehicle, and to sit down in the patrol car's backseat. (*See* Pl.'s

Resp. to Def.'s Mot. for Summ. J., at 9). The Court may rely on the BWC footage rather than the Plaintiff's characterizations of his actions towards the Defendant to resolve this alleged dispute of fact. *See Scott v. Harris*, 550 U.S. 372, 379-381 (2007).

The fact of the Plaintiff's resistance to the Defendant's commands plays into the objective reasonableness analysis. As an initial matter, "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In fact, the Eleventh Circuit has recognized that "the typical arrest involves some force and injury." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). Here, the Defendant's use of a shove to get the Plaintiff into the patrol car's backseat was objectively reasonable. Contrary to the Plaintiff's characterization of the facts, the Defendant did not appear to "slam Plaintiff's head against the metal bars," (Compl. ¶ 16); instead, the Plaintiff may have hit his head on the bars as a result of the Defendant's chest push. The injuries resulting from a use of force "can be evidence of the kind or degree of force that was used by the officer." *Charles*, 18 F.4th at 700. It is undisputed that the Plaintiff never complained of any pain or injury resulting from his alleged head injury, and the Court is permitted to rely on that evidence in evaluating the bodily harm to the Plaintiff as part of the reasonableness analysis. In doing so, the Court has no trouble concluding that there was "no

especially violent character" to the Defendant's shove. *See id.*

Although the crime the Plaintiff was detained for—driving under the influence—was not violent, by the time the Defendant pushed the Plaintiff into the backseat, the Plaintiff had ignored over ten lawful commands. *See id.* at 699 (noting that the objective reasonableness standard takes into consideration whether the plaintiff was "actively resisting arrest."). As the Defendant points out, he needed to separate the Plaintiff from his passenger and his car for the safety of everyone on scene until a field sobriety test could be conducted. From a reasonable officer's point of view at the moment the Defendant pushed the Plaintiff into the patrol car, the Plaintiff was unwilling to get into the patrol car on his own and there were no other less forceful means of securing the Plaintiff in the car. Although the Plaintiff contends he posed no threat to the Defendant, the Court is obligated to take into consideration the fact that the Defendant was in the position of making a judgment call as to the best way to secure the scene and the parties involved with limited knowledge as to the threat (or lack thereof) that the Plaintiff ultimately posed. *See id.*

While the Court is sympathetic to the injuries the Plaintiff alleges he suffered, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* For these reasons, the Plaintiff has failed to carry his burden of establishing a violation of his Fourth Amendment rights. *Gates*, 884 F.3d at 1297. It follows that he

has necessarily failed to establish the violation of clearly established law, too: "[I]f a defendant has not violated the law at all, he certainly has not violated clearly established law." *Rodriguez*, 280 F.3d at 1345 (quotation marks and citation omitted). Therefore, the Defendant is entitled to qualified immunity as to the Plaintiff's excessive force claim under the Fourth Amendment and § 1983. *See Gates*, 884 F.3d at 1297; *Gaines*, 871 F.3d at 1208. Accordingly, the Court will grant the Defendant's Motion for Summary Judgment [Doc. 19] as to the Plaintiff's excessive force claim (Count 1).

### ii. Official Immunity as to Assault and Battery Claims

Next, as to the Plaintiff's state law assault and battery claims, the Defendant is entitled to official immunity under Georgia law. As explained above, the evidence shows that the force employed by the Defendant was reasonable under the circumstances in order to detain the Plaintiff for the suspected offense of driving under the influence. But even if it were not, mere unreasonable conduct is insufficient to prevent the application of official immunity. *See Black*, 811 F.3d at 1266. And here, the Plaintiff has not even alleged that the Defendant was acting maliciously or with intent to cause him injury and pain. *See* Ga. Const. art. I, § 2, ¶ IX(d) (providing that state officials have official immunity from their discretionary actions *unless* they acted "with actual malice or with actual intent to cause injury.").

The Plaintiff's argument regarding the City of Atlanta's use of force policy assumes without supporting authority or argument that the Defendant's use of force against him was a ministerial act. Under Georgia law,

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

*Roberts v. Mulkey*, 343 Ga. App. 685, 687 (2017) (quotation marks and citation omitted). There is no question in the Court's mind that a police officer's decision on whether and how much force to employ in conducting a detention or arrest is a discretionary action rather than a ministerial action under Georgia law. The Eleventh Circuit's case law on excessive force acknowledges as much by allowing consideration of the judgment calls police officers must make on the job as to the use of force. *See Piazza*, 923 F.3d at 953. The Court's conclusion is also buttressed by the Supreme Court of Georgia's statement that "a ministerial act is one that is a mandatory fixed obligation for which mandamus will lie to compel performance." *Common Cause/Georgia v. City of Atlanta*, 279 Ga. 480, 763-64 (2005). Certainly, a mandamus action cannot lie to compel a police officer to use or not use force in the course of an arrest or detention. Therefore, the Court need not consider whether the Defendant violated the City of Atlanta's use of force policy in detaining the Plaintiff; the Defendant is

14

entitled to official immunity for his actions under the Georgia Constitution absent a showing of actual malice or intent to cause injury. *See* Ga. Const. art. I, § 2, ¶ IX(d). The Defendant is entitled to official immunity on the Plaintiff's state law assault and battery claims (Count 2), and the Defendant's Motion for Summary Judgment [Doc. 19] will be granted as to this claim.

### iii. Punitive Damages and Attorney's Fees

Finally, "[a] prerequisite to any award of attorney fees under O.C.G.A. § 13-6-11 is the award of damages or other relief on the underlying claim. Similarly, punitive damages under O.C.G.A. § 51-12-5.1 cannot be awarded where no actual damages are awarded." *Morris v. Pugmire Lincoln Mercury, Inc.*, 283 Ga. App. 238, 241 (2007) (quotation marks and citations omitted). Likewise, only prevailing parties are entitled to attorney's fees in § 1983 actions. 42 U.S.C. § 1988(b). Because the Court is finding against the Plaintiff on both of his merits claims, his attorney's fees and punitive damages claims necessarily fail as well.

### IV. Conclusion

For the foregoing reasons, the Plaintiff's Motion for Leave to Amend his Response to the Defendant's Statement of Material Facts [Doc. 31] is GRANTED. The Defendant's Motion for Summary Judgment [Doc. 19] is also GRANTED and his Motion to Strike the Plaintiff's Response to his Statement of Material Facts [Doc. 29] is DENIED. The Clerk is DIRECTED to enter

judgment in favor of the Defendant and to close the case.

      SO ORDERED, this    9th    day of January, 2025.


THOMAS W. THRASH, JR.
United States District Judge